**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DEMENCIO BAEZ,

                                        Plaintiff,

              - v -                                           Civ. No. 9:04-CV-819
                                                                    (FJS/RFT)

JOSEPH E. McCOY and J. KEISER,

                                        Defendants.


**APPEARANCES:**                                    **OF COUNSEL:**


DEMENCIO BAEZ
Plaintiff, *Pro Se*
88-A-5196
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ELIOT SPITZER                               PATRICK F. MacRAE, ESQ.
Attorney General for the State of New York       Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Demencio Baez brings a civil action pursuant to 42 U.S.C. § 1983, alleging

Defendants failed to protect him and were deliberately indifferent to his medical needs in violation

of the Eighth Amendment.  Dkt. No. 1, Compl. at First Claim & Second Claim.  Defendants Joseph

E. McCoy, Superintendent at the Cayuga Correctional Facility ("Cayuga"), and J. Keiser, Doctor at

Cayuga, bring this Motion for Summary Judgment.  Dkt. No. 14; *see also* Compl. at Defs.'

Information.  Plaintiff opposes the Motion.  Dkt. No. 17.  For the reasons to follow, it is

recommended that the Motion for Summary Judgment be **granted**.

## I. FACTS[1]

Plaintiff was housed at Cayuga for the period of April 13, 2004 to July 1, 2004.[2]  Dkt. No.

14, Defs.' 7.1 Statement at ¶ 8, Ex. B, Chronological History.  Prior to Plaintiff's arrival at Cayuga,

on March 24, 2004, Plaintiff fought with his cellmate at the Five Points Correctional Facility ("Five

Points") because of issues regarding smoking and music.  *Id.* at ¶ 9, Ex. C, Fight Investigation

Report, dated Mar. 24, 2004.  A Misbehavior Report was issued against Plaintiff based on the

incident, charging Baez with violent conduct, fighting, and sparring/disorderly conduct.  *Id.* at ¶ 10,

Ex. C, Inmate Misbehavior Report, dated Mar. 24, 2004.  A hearing on the Misbehavior Report was

conducted on March 30, 2004; however, Plaintiff refused to attend the hearing and was

subsequently found guilt of fighting and disorderly conduct.  *Id.* at ¶¶ 11-13, Ex. C, Hr'g

Disposition & Case Data Worksheet.

Later that day on March 24, 2004, Plaintiff was issued another Misbehavior Report at Five

Points for possessing outdated or unauthorized medications, lying, and making misleading

statements.  *Id.* at ¶ 14, Ex. D, Hr'g Tr. at p. 2.  A hearing was held on April 1, 2004, at which time

Plaintiff refused to attend the hearing.  *Id.* at ¶¶ 15 & 16, Ex. D, Hr'g Tr. at p. 1.  At the hearing it

was found that the value of the medications was $583.70 and that Plaintiff had requested refills

---

[1] Plaintiff's response to the Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York.  Plaintiff only submitted a brief Response with accompanying Exhibits but did not provide a Statement of Material Facts, Supporting Affidavit, nor a Memorandum of Law as required.  *See* N.D.N.Y.L.R. 7.1(a).  Normally, if no Statement of Material Facts are filed, Defendants' Statement of Material Facts are deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).  This Court, nonetheless, will proceed to decide this Motion with the aid of Defendants' Statement of Material Facts with accompanying Exhibits and Plaintiff's Verified Complaint with Exhibits.

[2] Although Defendants refer to the date of transfer in Cayuga for the year 2005, the date is in error as the events took place in 2004 as illustrated in subsequent statements provided in the Defendants' Statement of Material Facts.

when he was not in need of any medications.  *Id.* at ¶ 17, Ex. D, Hr'g Tr. at p. 2.  Baez was found

guilty of both charges.  *Id.* at ¶ 18, Ex. D, Hr'g Tr. at p. 3.  Plaintiff sent a letter to Commissioner

Goord appealing the decision.  Compl., Unnumbered Ex. 1,[3] Goord Lt., dated May 7, 2004.

On May 14, 2004, Plaintiff was issued a Misbehavior Report at Cayuga for refusing a direct

order and refusing to "double-cell."  Defs.' 7.1 Statement at ¶ 19, Ex. E, Misbehavior Report, dated

May 14, 2004.  A hearing was held on May 27, 2004, which Plaintiff did not attend as he had signed

a form waiving his right to be present at the hearing.  *Id.* at ¶¶ 20-21, Ex. E, Hr'g Disposition &

Hr'g Attendance Waiver.  Plaintiff was found guilty on both charges.  *Id.* at ¶ 22, Ex. E, Hr'g

Disposition.  On May 28, 2004, Plaintiff was issued another Misbehavior Report on the same two

charges.  *Id.* at ¶ 23, Ex. F, Misbehavior Report, dated May 28, 2004.  A hearing was held on June

3, 2004, and Plaintiff was found guilty on both charges.  *Id.* at ¶¶ 24 & 26, Ex. F, Hr'g Disposition

& Hr'g Attendance Waiver.  Plaintiff did not attend that hearing and refused to sign the waiver

form.  *Id.* at ¶ 25,  Ex. F, Hr'g Attendance Waiver.  On June 8, 2004, Plaintiff again received a

Misbehavior Report with the same charges.  *Id.* at ¶ 27, Ex. G, Misbehavior Report, dated June 8,

2004.  The hearing was held on June 10, 2004, and Plaintiff was found guilty again on the two

charges.  *Id.* at ¶¶ 28 & 30, Ex. G, Hr'g Disposition.  Plaintiff did not attend the hearing nor did he

sign the waiver form.  *Id.* at ¶ 29, Ex. G, Hr'g Attendance Waiver.

On June 2, 2004, Plaintiff wrote to Commissioner Goord appealing his hearing of May 27,

2004, about his double bunking and medication issues.  Compl., Unnumbered Ex. 2, Goord Lt.,

dated June 2, 2004.  On June 7, 2004, Plaintiff wrote another letter to Commissioner Goord

---

[3] As Plaintiff does not number the Exhibits attached to his Complaint, the Exhibits will be numbered by the Court for convenience.

appealing his other two hearings regarding refusing a direct order and to "double-cell" and made complaints about his double bunking and medication issues. *Id.*, Unnumbered Ex. 3, Goord Lt., dated June 7, 2004. On June 17, 2004, Plaintiff further wrote a letter to the Medical Review Board complaining about all three hearings as well as his medical problems including arthritis in his shoulders, pain in his feet, injuries to his face, head, neck, body, left ankle, left index finger, and a vitamin B-12 deficiency. *Id.*, Unnumbered Ex. 4, Review Bd. Lt., dated June 17, 2004. On June 19, 2004, Plaintiff resubmitted his appeals to Commissioner Goord on his hearings dated April 1, May 27, and June 3 and 6, 2004.[4] *Id.*, Unnumbered Ex. 5, Goord Lt., dated June 19, 2004.

On March 11, 2004, prior to Plaintiff's arrival at Cayuga, he received lab work to test his cholesterol levels, which were found to be within the normal range. Defs.' 7.1 Statement at ¶ 31, Ex. H, Lab Report, dated Mar. 12, 2004. On March 24, 2004, Plaintiff was seen by the medical staff at Five Points after his fight with his cellmate and, at that time, Plaintiff denied having injuries; it was noted that there were no obvious injuries. *Id.* at ¶ 32, Ex. H, Ambulatory Health Record ("AHR") entry, dated Mar. 24, 2004, at p. 9. Later that day, Plaintiff was seen again by the medical staff and Plaintiff was found to have "multiple abrasions, swollen areas, and bruises on his head, ears and neck." *Id.*, Ex. H, AHR entry, dated Mar. 24, 2004, at p. 20.

On March 25, 2004, the medical staff made a notation in Plaintiff's medical record of all the medications that had been found in Plaintiff's cell. *Id.* at ¶ 33, Ex. H, AHR entry, dated Mar. 25, 2004, at p. 19. There were ten different medications found and over six hundred forty-two (642) pills. *Id.* The medical staff at Five Points also discontinued the following medications: Allegra-D,

---

[4] Plaintiff also submitted an appeal from a May 25, 2004 hearing but the Court is not aware if a hearing was actually conducted on that date as there was no mention of it in either Plaintiff's Complaint or Defendants Statement of Material Facts.

Gemfibrozil, Avandia, Glucophage, Flomax, and Neurontin. *Id.* at ¶ 34, Ex. H, AHR entry, dated

Mar. 26, 2004, at p. 18. The medications that were continued were Enalapril, Glyburide, and

Motrin. *Id.*

Because of Plaintiff's altercation with his cellmate at Five Points, Plaintiff received an x-ray

on his left ankle and left second finger. *Id.* at ¶ 35, Ex. H, Radiological Consultation, dated Mar. 31,

2004. There was only soft tissue swelling, no fracture of his ankle, and it was found that "osseous

structures and surrounding soft tissues [were] unremarkable" for Plaintiff's finger. *Id.* Then on

April 13, 2004, after Plaintiff's transfer to Cayuga, Plaintiff was seen by the medical staff. *Id.* at ¶

36, Ex. H, AHR entry, dated Apr. 13, 2004, at p. 17. It was noted that Plaintiff's B-12 level was

low, that he had previously been hoarding medications, that some medications should remain

discontinued, and prescriptions were written for the continued medications. *Id.* On April 15, 2004,

Dr. Keiser requested a neurological consultation for Plaintiff's complaints of dizziness, possibly

associated with the low B-12 level, and foot pain; the consult was arranged on May 6, 2004, and it

was scheduled for May 15, 2004. *Id.* at ¶¶ 37 & 47, Ex. H, Request & Report of Consultation, dated

Apr. 15, 2004, at p. 24. Plaintiff signed the consent form on April 15, 2004, but subsequently

refused the appointment on May 14, 2004. *Id.* at ¶¶ 38 & 50, Ex. H, Contract for Specialty Care, at

p. 26 & Refusal of Medical Examination, at p. 25. On April 15, the medical staff also noted again

in Plaintiff's record that Plaintiff had previously hoarded medications. *Id.* at ¶ 39, Ex. H, AHR

entry, dated Apr. 15, 2004, at p. 16.

On April 17, 2004, Baez requested to be on a lower bunk which was denied by the medical

staff as he did "not fit protocol." *Id.* at ¶ 40, Ex. H, AHR entry, dated Apr. 17, 2004, at p. 15.

Plaintiff made the same request on April 20, 2004, and was again denied as there was no indication

that Plaintiff had a need for it.  *Id.* at ¶ 41, Ex. H, AHR entry, dated Apr. 20, 2004, at p. 15.  Plaintiff

requested the lower bunk once more on April 27, 2004, because of his "broken left forefinger,

arthritic shoulders, ankle pain and back pain" and was denied as there was no medical need.  *Id.* at ¶

44, Ex. H, AHR entry, dated Apr. 27, 2004, at p. 14.

On April 21, 2004, lab work was conducted on Plaintiff to check his cholesterol level and it

was found that the levels were within the normal range.  *Id.* at ¶ 42, Ex. H, Lab Report, dated Apr.

22, 2004.  On April 23 and 29, May 4, 7, and 13, 2004, Plaintiff received refills for Ibuprofen.  *Id.* at

¶¶ 43, 45-46, & 48-49, Ex H. at pp. 11-14.  Then on May 15, 2004, Plaintiff wrote to Associate

Commissioner Wright stating that his medications were taken and that Doctor Keiser removed his

vitamins and lower bunk permit.  Compl., Unnumbered Ex. 6, Wright Lt., dated May 15, 2004.  On

May 17, 2004, Plaintiff had elevated blood pressure and was prescribed Enalapril, but since Plaintiff

had his own supply, Plaintiff was told to use this personal supply.  Defs.' 7.1 Statement at ¶ 51, Ex.

H, AHR entry, dated May 17, 2004, at p. 10.

On May 21, 2004, Plaintiff again asked to be placed on a lower bunk but was denied because

there was no medical need.  *Id.* at ¶ 52, Ex. H, AHR entry, dated May 21, 2004, at p. 9.  At that

time, Plaintiff also requested multi-vitamins because he felt "tired, dizzy and nauseous" but such

request was denied since vitamins were "not indicated" and Plaintiff had refused the neurological

consult.  *Id.*  That same day, Plaintiff sent a letter to the Medical Review Board stating that Dr.

Keiser had removed his vitamins and lower bunk permit and that he was being refused medications.

Compl., Unnumbered Ex. 7, Review Bd. Lt., dated May 21, 2004.  Plaintiff submitted another letter

to Commissioner Goord on May 21, 2004, to conduct an investigation into the denial of medication.

*Id.*, Unnumbered Ex. 8, Goord Lt., dated May 21, 2004.

On May 24, 2004, Plaintiff received a refill of Glyburide and Enalapril.  Defs.' 7.1 Statement at ¶ 53, Ex. H, AHR entry, dated May 24, 2004, at p. 8.  On May 28, 2004, a refill of Ibuprofen was ordered after Plaintiff complained of a sore throat and shoulder pain.  *Id.* at ¶ 54, Ex. H, AHR entry, dated May 28, 2004, at p. 7.  Plaintiff also complained of cracked heels but it was noted Baez only had mildly dry skin.  *Id.*  On May 29, 2004, Plaintiff wrote to Superintendent McCoy about (1) his problems with Dr. Keiser, (2) the denial of medications, (3) that he could not go on medical trips because of his need to go to the bathroom as a result of his diabetes, and (4) that he could not be double bunked since he was threatened at Five Points by gangs.  Compl., Unnumbered Ex. 9, McCoy Lt., dated May 29, 2004.  Baez once again wrote to the Medical Review Board on the same date and on the issues.  *Id.*, Unnumbered Ex. 10, Review Bd. Lt., dated May 29, 2004.  Then, on May 30, 2004, Plaintiff, once more, requested to be assigned to a lower bunk because of Plaintiff's claim of arthritis and problems with his left foot.  Defs.' 7.1 Statement at ¶ 55, Ex. H, AHR entry, dated May 21, 2004, at p. 9.  Plaintiff's request was denied as there was no medical need and because Plaintiff failed to go to his neurological appointment.  *Id.*  In addition, Plaintiff had requested vitamins for his arthritis and "broken left second finger" but was denied as there was no medical need.  *Id.*

On June 1, 7, 14, 22, and 29, 2004, Plaintiff received refills for Glyburide and Enalapril and, on June 10, 2004, Plaintiff received a refill of Ibuprofen for shoulder pain and a sore throat.  *Id.* at ¶¶ 56-60 & 62-63, Ex. H at pp. 2, 5, & 6.  On June 3, 2004, Plaintiff complained of allergies and a sore throat but it was found "unremarkable."  *Id.* at ¶ 57, Ex. H, AHR entry, dated June 3, 2004, at p. 6.  On June 17, 2004, Plaintiff was given Motrin for his pain and was seen by the doctor after complaining of allergies and pain.  *Id.* at ¶ 61, Ex. H, AHR entry, dated June 17, 2004, at p. 4.  The

doctor did not prescribe anything for the allergies, the pain in Plaintiff's feet were deemed

essentially normal, and Plaintiff was again denied a request for a lower bunk.  *Id.*  The doctor also

made a request to have Plaintiff's B-12 level checked.  *Id.*

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of

law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine

issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis

of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in

accordance with local court rules, served a concise statement of the material facts as to which it

contends there exist no genuine issues to be tried, those facts will be deemed admitted unless

properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d

Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific

facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials"

of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344

F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to

defeat a motion for summary judgment when the moving party has set out a documentary case.");

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn

statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. Eleventh Amendment

Plaintiff brings suit against Defendants McCoy and Keiser in both their individual and official capacities. *See* Compl. Plaintiff seeks monetary damages against these individuals in their individual and official capacities. *Id.* at Relief Sought.

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment bars a suit against the state in federal court unless the state consents to being sued or Congress legislatively overrides a state's immunity. *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2000). The state's immunity extends to state officials "act[ing] on behalf

of the state" when the state is the "real, substantial party in interest." *Id.* at 69-70 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddie, Inc.*, 506 U.S. 139, 142-47 (1993) & quoting *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)). Moreover, the Eleventh Amendment will bar recovery for money damages in a suit "against state officials in their official capacities." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

Therefore, the Defendants cannot be sued in their official capacities in a claim for money damages. However, Baez may seek damages from them in their individual capacities.

### C.  Failure to Protect

Plaintiff claims Cayuga Superintendent McCoy failed to protect him by placing him in a double cell after he was injured by another inmate at Five Points. Compl. at First Claim. Baez claims he fears for his life since he is being threatened. *Id.* Plaintiff claims that the gangs are out to get him, "threats within the prison system go from one jail to another," and he "should not be forced to be in double celling knowing" he had already been attacked. Dkt. No. 17, Pl.'s Resp. For this reason, and further because he claims he never refused an order, Plaintiff states he cannot, and should not, be double bunked. Compl. at First Claim

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To state a claim under § 1983, the inmate "must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

The Supreme Court has delineated a two-part test for deliberate indifference. First, the

"depravation alleged must be, objectively, sufficiently serious," and "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Hayes v. New York City Dep't of Corr.*, 84 F.3d at 620.

The Eighth Amendment also imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. at 833 (citation omitted). Nonetheless, prison officials may not be constitutionally liable for every injury an inmate suffers at the hands of other inmates. *Id.* at 834. A plaintiff may recovery for injuries received while in custody "if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. at 834). The Second Circuit has stated that "[t]he failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment." *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (citing *United States v. Bailey*, 444 U.S. 394, 423 (1980)). However, "[a]n isolated omission to act by the state prison guard does not support a claim under section 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Id.* (quoting *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)). Instead, "[r]eckless disregard of plaintiff['s] right to be free from attacks by other inmates

*-11-*

may be shown by the existence of a pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk." *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221-22 (S.D.N.Y. 1995) (quoting *Rucco v. Howard*, 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993) & *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)) (internal quotation marks omitted) (alterations in original). Furthermore, "an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference." *Sims v. Bowen*, 1998 WL 146409, at *3 (N.D.N.Y. Mar. 23, 1998). Moreover, there is no constitutional right to the cellmate of a prisoner's choice. *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984).

In addition, "[t]he practice of double-celling inmates, standing alone, does not constitute cruel and unusual punishment under the Eighth Amendment." *Jones v. Goord*, 190 F.R.D. 103, 107 (S.D.N.Y. 1999) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981)). The Eighth Amendment may be implicated if the double celling is "combined with other adverse conditions." *Id.* at 108 (quoting *Bolton v. Goord*, 992 F. Supp. 604, 626 (S.D.N.Y. 1998)). The Supreme Court has stated that adverse conditions must be examined based on a totality of circumstances and "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis in original). Furthermore, a "fear of assault" by another prisoner in a double cell does not support a constitutional claim as it "is not an objectively serious enough injury to support a claim for damages." *Bolton v. Goord*, 992 F. Supp. at 627 (citing *Doe v.*

*Welborn*, 110 F.3d 520, 524 (7th Cir. 1997)); *see also Waldo v. Goord*, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998).

Here, Plaintiff claims that his fight with another inmate occurred at a different facility, that he fears for his life because gangs are after him, and for these reasons, he does not want to be in a double cell. In Plaintiff's failure to protect claim, he has failed to demonstrate there was deliberate indifference and that Defendant McCoy knew of and disregarded an excessive risk to Plaintiff's safety. Although Defendant McCoy does have a duty to protect Baez from violence by other prisoners, the incident in question did not take place at Cayuga. The injuries Baez sustained came to pass at Five Points. Plaintiff makes no claim that he was injured or physically harmed or even threatened by another inmate while at Cayuga.

Plaintiff has also failed to state an Eighth Amendment claim with regard to double celling. Plaintiff has not alleged that there were adverse conditions of confinement in his double cell. Baez merely claims that he fears for his life because of the gangs. This fear does not support a constitutional claim.[5]

Therefore, it is recommended that the Motion for Summary Judgment be **granted** on this issue.

### D. Deliberate Indifference to Medical Needs

Baez's claim of deliberate indifference to his medical needs include denial of medical care because (1) his "prescribed vitamins" and lower bunk permit were taken away; (2) he informed Dr.

---

[5] Defendants also assert that because Plaintiff failed to attend the hearings on these issues that it should be deemed a failure to exhaust on the part of Plaintiff. However, Plaintiff did appeal the hearings. *See supra* Part I. Defendants do not cite any case law for the proposition that a failure to attend a hearing alone would constitute a failure to exhaust. Dkt. No. 14, Defs.' Mem. of Law at pp. 3-4. Nevertheless, the issue need not be discussed further as the claim is disposed of on the merits.

Keiser of his B-12 deficiency but Keiser did not provide any medication; (3) he received no medicine for his "excruciating pain on [his] feet, the allergy and sinus, a fractured index finger, left foot sprained, backaches and headaches;" (4) he suffered pain in his veins because of his cholesterol; (5) he did not receive medical care during the week of June 21, 2004, when requested; and (6) an outside medical trip was scheduled without his knowledge.  Compl. at Second Claim. Plaintiff further alleges that when he informed Superintendent McCoy of the problems, he received no help.  Compl. at First Claim.

Prohibited punishment under the Eighth Amendment includes that which "involve[s] the unnecessary and wanton infliction of pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs."  *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted) (alteration in original).  This standard contains objective and subjective elements.  *Id.*  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Id.* at 183-84 (citing *Chance*, 143 F.3d at 702 & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

This deliberate indifference must be in regards to the "prisoner's serious illness or injury[.]" *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Additionally, "'[b]ecause society does not expect that

*-14-*

prisoners will have unqualified access to health care,' a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." *Smith*, 316 F.3d at 184 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (further citation omitted).  Some factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an inmate is not required to show "that he or she experiences pain that is the limit of human ability to bear, nor [does the court] require a showing that his or her condition will degenerate into a life threatening one").

The prisoner has to show "more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184 (internal quotation marks and citation omitted).  Prison officials act with deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837).  The Eighth Amendment deals with "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract[.]" *Smith*, 316 F.3d at 186 (citations omitted).  Moreover, the "severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Id.* at 187 (citation omitted).

*-15-*

A prisoner's disagreement with the form of treatment proscribed by medical personnel will not necessary implicate the Eighth Amendment. *Ifill v. Goord*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) (citation omitted).  Furthermore,

> disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment.  Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

*Id.* (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)).

Notably, when a prisoner, in essence, claims medical malpractice,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omission sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Estelle*, 429 U.S. at 106 & n.14).

If the malpractice involved "culpable recklessness, i.e., an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of harm,'" then it may constitute deliberate indifference.  *Id.* (quoting *Farmer*, 511 U.S. at 839).  Additionally, "[p]rison officials and medical personnel have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons."  *Ifill v. Goord*, 2004 WL 1663994, at *3 (internal quotation marks and citation omitted).

Here, Plaintiff must first establish that he has a serious injury or illness.  Plaintiff claims he has foot pain, allergies, a fractured index finger, a left foot sprain, backaches, headaches, pain in his veins because of his cholesterol, and vitamin B-12 deficiencies.  Compl. at Second Claim.

Although Plaintiff does state that he has diabetes, it is unclear to this Court whether he claims that the diabetes is a serious illness for the purposes of this action. *See id*; Dkt. No. 17, Pl.'s Resp. at pp. 2-3. As to Plaintiff's claim regarding his finger and foot, x-rays were taken of both and no fracture was found of the finger and there was only "soft tissue swelling" of his ankle. Defs.' 7.1 Statement at ¶ 35, Ex. H, Radiological Consultation, dated Mar. 31, 2004. Furthermore, Plaintiff had lab work performed to check his cholesterol, which came back normal. *Id.* at ¶¶ 31 & 42, Ex. H, Lab Reports, dated Mar. 12, 2004 & Apr. 22, 2004. Plaintiff's other claimed ailments, allergies, backaches, headaches, and B-12 deficiencies may not be serious, although Plaintiff claims constant pain from these ailments. Defendants claim they are "insignificant." Dkt. No. 14, Defs.' Mem. of Law at p. 8. Plaintiff's description of some of his conditions are far from accurate. However, a condition may be serious if a doctor perceives the medical need as worthy of comment or treatment. *See Brock v. Wright*, 315 F.3d at 162-63. The doctors attempted to treat the B-12 deficiency and prescribed Ibuprofen for Plaintiff's pain. Defs.' 7.1 Statement at ¶¶ 37, 43, & 45-49, Ex. H, Request & Report of Consultation, dated Apr. 15, 2004, at p. 24 & Ex. H at pp. 11-14. In any event, this Court is not convinced that Plaintiff has established a serious injury, except possibly the diabetes. Nonetheless, we will view his conditions in a light most favorable to him since he is the nonmovant, and consider them serious.

Plaintiff must now prove that the Defendants acted with a culpable state of mind and that they knew of and disregarded an excessive risk to Plaintiff's health. As to Defendant Keiser, Plaintiff claims that medications were removed and that his lower bunk permit from the previous facility was taken away. However, Plaintiff's medications were taken away prior to his arrival at Cayuga. *Id.* at ¶ 33, Ex. H, AHR entry, dated Mar. 25, 2004, at p. 19. Medications were

discontinued at Five Points and the same medications remained discontinued upon Plaintiff's arrival at Cayuga. *Id.* at ¶¶ 34 & 36, Ex. H, AHR entry, dated Mar. 26, 2004, at p. 18 & AHR entry, dated Apr. 13, 2004, at p. 18.  The medications that were continued at Five Points were also continued at Cayuga. *Id.*  Plaintiff, on many occasions, also requested a lower bunk but was denied by the medical staff at Cayuga because there was no medical need to be on a lower bunk. *Id.* at ¶¶ 40, 41, 44, 52, 55, & 61, Ex. H, AHR entries, dated Apr. 17, 2004, at p. 15, Apr. 20, 2004, at p. 15, Apr. 27, 2004, at p. 14, May 21, 2004, at p. 9, & June 17, 2004, at p. 4.  Dr. Keiser also attempted to help Plaintiff with his B-12 problems by requesting a neurological consultation to deal with the dizziness that could have been associated with a low B-12 level but Plaintiff signed the refusal of medical treatment form and refused to go to the consultation.  *Id.* at ¶¶ 37, 38, & 50, Ex. H, Request & Report of Consultation, dated Apr. 15, 2004, at p. 24, Contract for Specialty Care, at p. 26, & Refusal of Medical Examination, at p. 25.

Plaintiff also states that Defendant Keiser did not prescribe any medications for any of his medical needs.  However, Plaintiff received many refills of Ibuprofen for his pain and also received several refills of Glyburide and Enalapril for high blood pressure, medications he had been previously taking at Five Points.  *Id.* at ¶¶ 43, 45-46, 48-49, 51, 53, 54, 56-63, Ex H. at pp. 2, 5, 6, & 11-14, AHR entries, dated May 17, 2004, at p. 10, May 24, 2004, at p. 8, May 28, 2004, at p. 7, & June 17, 2004, at p. 4.  If his complaints are nothing more than a disagreement with the treatment he was receiving, the Eighth Amendment is not be implicated.  *See Ifill v. Goord*, 2004 WL 1663994, at *3.  Plaintiff further claims that he was not seen during the week of June 21, 2004, and yet, the medical record reflects that Plaintiff was seen by medical staff during that week on the 21st, 22nd, and 25th.  *Id.*, Ex. H, AHR entries, dated June 21, 2004, at p. 3, June 22, 2004, at p. 3, & June 25,

2004, at p. 2.

Plaintiff's final claim against Dr. Keiser is that an outside medical trip was scheduled

without his knowledge.  Defendant Keiser scheduled a neurological consultation due to Baez's

complaints of dizziness, which could have been associated with a low B-12 level, and foot pain.  *Id.*

at ¶ 37, Ex. H, Request & Report of Consultation, dated Apr. 15, 2004, at p. 24.  Plaintiff signed the

consent form to have the consultation, but then refused the appointment because he stated that he

had problems with frequent urination as a result of diabetes and that he could not travel.  *Id.* at ¶¶ 38

& 50, Ex. H, Contract for Specialty Care, at p. 26 & Refusal of Medical Examination, at p. 25; Pl.'s

Resp.  Plaintiff has acknowledged enduring a three day bus trip from Franklin Correctional Facility

to Five Point albeit there was a bathroom present on the bus.  Pl.'s Resp.  Without more, Plaintiff

has failed to show that this medical travel would lack similar accommodations or be extended for a

lengthy duration causing him urinary woes.  His decision not to travel is solely his own and

constitutes nothing more than a disagreement with the treatment. Furthermore, Plaintiff's claim that

he had no knowledge of the appointment must fail as his signature appears on the consent form.

Defs.' 7.1 Statement at ¶¶ 38 & 50, Ex. H, Contract for Specialty Care, at p. 26 & Refusal of

Medical Examination, at p. 25; *see also supra* p. 5.

Plaintiff's claim against Defendant McCoy is that he did not help him after being informed

of the problems.  The Second Circuit has held that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Hernandez v.*

*Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994)).  However, if a plaintiff seeks to bring a § 1983 action for supervisory liability, there needs to

be a showing of personal involvement by the supervisor.  *Hernandez v. Keane*, 341 F.3d at 144.

"'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983." *Id.* at 144-45 (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)) (alterations in original).  However, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) (further citations omitted).

Here, Plaintiff does not allege Defendant McCoy was personally involved.  It seems as if Plaintiff's sole claim is that McCoy did not remedy a wrong after being informed.  However, as noted above, it is evident that Dr. Keiser performed his duties and Plaintiff's claims cannot withstand the scrutiny of the record.  There was no wrong to be remedied as Baez received medication, medical care, had knowledge of all appointments, and there was no medical need for a lower bunk.  As there was no Eighth Amendment violation by Dr. Keiser, Defendant McCoy would not have to remedy a wrong that did not exist.

Therefore, it is recommended that the Motion for Summary Judgment on the deliberate indifference claims under the Eighth Amendment be **granted**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 14) be **GRANTED** and the entire Complaint be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. r.

Civ. P. 72, 6(a), & 6(e).


Date:   March 16, 2006
        Albany, New York




RANDOLPH F. TREECE
United States Magistrate Judge